perior, in depriving defendant altogether of the defense founded on the contributory negligence of the plaintiff. In such cases the question whether or not the plaintiff was negligent will depend upon the circumstances attending the accident which are generally unknown to the defendant until developed on the trial. There is no reason to believe that the Legislature intended to produce such a result.

[2] In our opinion the purpose of the statute will be fully met if it be held that a defendant may plead generally the plaintiff's negligence, thus giving notice of his intentions to rely upon that defense if the facts, as shown upon the trial, shall warrant it. In addition, the statute has placed upon defendant's shoulders the burden of proof as to plaintiff's negligence, relieving plaintiff from the burden which he formerly bore of proving affirmatively his own freedom from negligence. This construction of the statute will do justice to both parties to an action like the present without unduly burdening either and will not operate to deprive defendants in negligence cases of a perfectly legitimate defense. It is also in harmony with Griffin v. Cunard S. S. Co., 159 App. Div. 453, 144 N. Y. Supp. 517, recently decided by this court.

The interlocutory judgment appealed from must be reversed, with costs and disbursements, and the demurrer overruled, with costs. All concur.

---

### D'UTASSY v. MALLORY S. S. CO. (No. 5696.)

(Supreme Court, Appellate Division, First Department. May 1, 1914.)

1. SHIPPING (§ 134*)—CARRIAGE OF GOODS—LIABILITY—STATUTORY EXEMPTIONS—WAIVER.

The immunity granted by Rev. St. § 4282 (U. S. Comp. St. 1901, p. 2943), and Act Cong. June 19, 1886, c. 421, § 4, 24 Stat. 80 (U. S. Comp. St. 1901, p. 2945), exempting owners of vessels from liability for loss of goods by fire, not caused by design or neglect, may be waived, and the liability of a carrier by water may be extended.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 490, 491; Dec. Dig. § 134.*]

2. SHIPPING (§ 140*)—BILL OF LADING—CONSTRUCTION.

A bill of lading executed by a railroad for the transportation of merchandise on its line as initial carrier and by connecting carriers by water, which provides that in case of physical necessity the carrier may forward the property by any railroad or route, and, if the diversion shall be from a rail to a water route, the liability of the carrier shall be the same as though the entire carriage were by rail, but, except in case of such diversion, water carriage shall be performed subject to the limitations provided by statute, and subject to the condition that no carrier shall be liable for any damage resulting from the perils of the sea, etc., does not extend the liability of a connecting carrier by water beyond that fixed by Rev. St. § 4282 (U. S. Comp. St. 1901, p. 2943) and Act Cong. June 19, 1886, c. 421, § 4, 24 Stat. 80 (U. S. Comp. St. 1901, p. 2945), declaring that no carrier by water shall be liable for loss by fire not caused by design or neglect.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493–495; Dec. Dig. § 140.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CARRIERS (§ 53*)—BILL OF LADING—CONSTRUCTION.

Where a shipper insists that a carrier by the bill of lading waived a statutory exemption, the court must in construing the bill seek to ascertain the intention of the parties, and give effect thereto, and the ordinary rule that where an exemption is claimed by a carrier the bill of lading must be construed strictly against the carrier does not apply.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 131, 165–167; Dec. Dig. § 53.*]

4. CARRIERS (§ 173*)—BILL OF LADING—LIABILITY OF CONNECTING CARRIERS.

A bill of lading issued by the initial carrier for transportation of merchandise on its railroad line, and by connecting carriers by water, is binding on the connecting carriers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 760–763, 781–784; Dec. Dig. § 173.*]

Appeal from Special Term, New York County.

Action by Leo L. D'Utassy against the Mallory Steamship Company. From an order sustaining a demurrer to the first separate defense, defendant appeals. Reversed, and demurrer overruled, with leave to withdraw on condition.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Burlingham, Montgomery & Beecher, of New York City (Ray Rood Allen, of New York City, of counsel), for appellant.

Tipple & Plitt, of New York City (Arthur W. Clement, of New York City, of counsel), for respondent.

LAUGHLIN, J. This action is brought to recover damages to a consignment of 138 bales of cotton, alleged to have been caused by fire on one of defendant's lighters in the port of New York on which it was being transferred from defendant's steamer, on which it had been transported from Galveston, Tex., to the Maine Steamship Company as a connecting carrier.

The cotton was delivered at Childress, Tex., to the Ft. Worth & Denver City Railway Company by C. S. Tiffany & Co., consigned to their order at St. John, New Brunswick, Canada, with directions to notify Cornwall & York Cotton Mills Company, Limited. The claim was assigned to plaintiff, who pleads part only of the bill of lading. The defendant in the part of the answer to which the demurrer is interposed pleads the entire bill of lading, and alleges that the fire happened without design or neglect on its part.

[1] The question presented for decision is whether, by the express terms of the bill of lading, the provisions of section 4282 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2943) have been waived by the carrier. That section provides as follows:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

These provisions were originally enacted in substantially the same form in the Act of Congress of March 3, 1851 (9 U. S. Statutes at

---

* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Large, p. 635, c. 43), which was an act relating to the limitation of the liability of shipowners as originally enacted. It contained a provision as follows:

"That nothing in this act contained shall prevent the parties from making such contract as they please extending or limiting the liability of shipowners."

But by subsequent amendment that sentence has been omitted. By section 7 of the original act, it was provided that the act should not apply "to the owner or owners of any canal boat, barge or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation." By section 4 of the Act of Congress of June 19, 1886 (24 U. S. Statutes at Large, p. 80, c. 421 [U. S. Comp. St. 1901, p. 2945]), the provisions first quoted were made applicable "to all sea-going vessels, and also to all vessels used on lakes or rivers or inland navigation, including canal boats, barges and lighters." It is quite plain, therefore, that by virtue of the provisions of said section 4282 of the Revised Statutes of the United States the defendant would not be liable. These statutory provisions were enacted to encourage shipbuilding (Richardson v. Harmon, 222 U. S. 96);[1] but it is, of course, competent for a carrier to waive the statutory immunity and to extend its liability (Abbot's Merchants' Shipping [14th Ed.] p. 1048; Carver on Carriage by Sea, [5th Ed.] p. 36; Matter of N. Y. L. & W. R. R. Co., 98 N. Y. 447; Virginia-Carolina Chemical Co. v. Norfolk & North American S. S. Co. [1912] 1 K. B. D. 229). The question here is whether defendant has done so.

[2] The bill of lading in question is known as a uniform bill of lading, which was evidently prepared under the supervision of the Interstate Commerce Commission, and agreed upon by shippers and carriers, after a series of conferences between them and the Interstate Commerce Commission. See In the Matter of Bills of Lading, 14 Interst. Com. Com'n, R. 346, and 29 Interst. Com. Com'n, R. 417. The only provisions of the bill of lading expressly referring to carriers by water are one in section 3, by which it is provided that in case of physical necessity the carrier shall have the right to forward the property "by any railroad or route between the point of shipment and the point of destination, but, if such diversion shall be from a rail to a water route, the liability of the carrier shall be the same as though the entire carriage were by rail"; and in section 9, the provisions of which, material to the question presented by the appeal, are as follows:

"Except in case of diversion from rail to water route, which is provided for in section 3 hereof, if all or any part of said property is carried by water over any part of said route, such water carriage shall be performed subject to the liabilities, limitations and exemptions provided by statute and to the conditions contained in this bill of lading not inconsistent with such statutes or this section, and subject also to the condition that no carrier or party in possession shall be liable for any loss or damage resulting from the perils of the lakes, sea, or other waters; or from explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, machinery, or appurtenances; or from collision, stranding or other accidents of navigation, or from prolongation of the voyage. * * * The term 'water carriage' in this section shall not be construed as including lighterage across rivers or in lake or other harbors, and the liability for such lighterage shall be governed by the other sections of this instrument. * * *"

[1] 32 Sup. Ct. 27, 56 L. Ed. 110.

It thus appears that by the first sentence the statutory exemption from liability was expressly reserved to carriers by water.

The respondent relies on the last sentence quoted from said section 9, and contends that the effect thereof is to waive the federal statutory exemption from liability for fire on a lighter in a harbor, occurring without its design or neglect, and to make the liability of a carrier by water for freight in such case governed by the provisions of section 1 of the bill of lading, which are as follows:

"The carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided. No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, or the act or default of the shipper or owner, or for differences in the weights of grain, seed, or other commodities caused by natural shrinkage or discrepancies in elevator weights. For loss, damage, or delay caused by fire occurring after forty-eight hours (exclusive of legal holidays) after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that of warehouseman only. Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon request of the shipper, owner, or party entitled to make such request; or resulting from a defect or vice in the property or from riots or strikes. When in accordance with general custom, on account of the nature of the property, or when at the request of the shipper the property is transported in open cars, the carrier or party in possession (except in case of loss or damage by fire, in which case the liability shall be the same as though the property had been carried in closed cars) shall be liable only for negligence, and the burden to prove freedom from such negligence shall be on the carrier or party in possession."

The appellant, on the other hand, contends that the only purpose of said sentence in section 9 was to make the liability of a carrier by rail for damages to freight on a lighter employed only incidentally in the course of its transportation the same as if the damages were caused while the freight was on a car, and thus to render its liability uniform throughout its transportation. That construction is indicated by the provision in section 3 which continues the carrier's liability as a railroad carrier even though it becomes necessary for it to carry by water; and I am of opinion that it is the proper construction of the bill of lading, and that it was not the intention of carriers by water to stipulate away their federal statutory exemption from liability. There does not appear to be any reason for a different rule of liability on the part of a carrier by rail, while performing a minor service in transporting the freight a comparatively short distance by its lighters, from that to which it is clearly subject while the freight is in transit on its cars; and it is manifest that it might, at least, inconvenience shippers to protect themselves by insurance with respect to loss through fire on lighters forming part of the railroad transportation; whereas, with respect to the transportation by a separate carrier by water, it would be necessary for them to obtain insurance to cover all marine risks including the risk of fire on the voyage, and it is not likely that they would encounter any great inconvenience by having such insurance

cover the entire transportation by the carrier by water. In this connection, it may be observed that there are other marine risks from which carriers by water are exempted, or with respect to which their liability is limited by law. See R. S. of U. S. § 4283 (U. S. Comp. St. 1901, p. 2943); section 3, Harter Act, so-called, being the Act of Congress of Feb. 13, 1893, 27 U. S. Statutes at Large, p. 445, c. 105 (U. S. Comp. St. 1901, p. 2946).

[3, 4] It is contended by the learned counsel for the respondent that the bill of lading should be construed strictly against the carrier. That is the ordinary rule where exemption is claimed by the carrier on the contract evidenced by the bill of lading prepared by it which the shipper is obliged to accept; but I think it is not applicable here, where there is a statutory exemption and it is attempted to hold the carrier on the theory that it has, by the bill of lading, waived its statutory exemption. Although the bill of lading was issued by the initial carrier, the intermediate carrier is undoubtedly bound by its provisions; but the construction of the contract is to be governed by the ordinary rules of construction with reference to the intention of the parties, and it should not be inferred, I think, that the statutory exemption from liability, which the shipper and the carrier are presumed to have known, has been waived, unless the bill of lading contains a provision on the same subject and as broad as and different from the statutory provisions, or otherwise clearly shows an intention to waive such exemption. See Hoffmans (D. C.) 171 Fed. 455; The St. Cuthbert (D. C.) 97 Fed. 340; In re Old Dominion S. S. Co. (D. C.) 115 Fed. 845; Houston Direct Navigation Co. v. Ins. Co., 89 Tex. 1, 32 S. W. 889, 30 L. R. A. 713, 59 Am. St. Rep. 17; Virginia-Carolina Chemical Co. v. Norfolk & North American S. S. Co., supra; Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038.

The demurrer therefore should have been overruled. It follows that the order should be reversed, with $10 costs and disbursements, and demurrer overruled, with $10 costs, but with leave to plaintiff to withdraw the demurrer on payment of the costs of the appeal and of the motion. ° All concur.